IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**LINO PAIZ,**

    **Plaintiff,**

v.                                            CIV No. 02-1283 LH/RHS

**ELIAS GONZALES, Mayor of the**
**Village of Cimarron, individually, and**
**DEBRA DECKER, individually and**
**in her capacity as Supervisor,**

    **Defendants.**

**MEMORANDUM OPINION AND ORDER**

    **THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment (Docket No. 51). The Court, having considered the motion and briefs of the parties as well as applicable case law, concludes that Defendants' motion is not well-taken and shall be **denied.**

**I.  Overview**

    Plaintiff's complaint states that it is brought pursuant to 42 U.S.C. § 1983 for retaliation under the First and Fourteenth Amendments of the United States Constitution. Plaintiff sues Defendant Elias Gonzales ("Gonzales") in his individual capacity and Defendant Debra Decker ("Decker") in both her individual capacity and in her capacity as supervisor. Plaintiff Paiz ("Paiz") was an employee of the Village of Cimarron from 1981 until 2002. He claims that he participated in a criminal investigation, regarding alleged misuse of Village funds by then-Mayor Gonzales. Paiz further claims that, following his participating in this criminal investigation, including his grand jury

1

testimony, he was retaliated against in his employment, including written reprimands, warnings, false accusations, and harassment, resulting in his constructive termination on January 31, 2002, all in violation of his First Amendment rights.

As noted above, Paiz claims retaliation in his employment in a sequence of events beginning with his participation in the audit of Village finances, which he claims led to his giving a statement to a state police investigator, which ultimately led to his being subpoenaed by the grand jury and its ultimate indictment of Mayor Gonzales. Paiz's claim rests upon the assertion that state actors cannot retaliate against an employee for exercising his constitutionally protected right of free speech.

Defendants seek dismissal of the claims against them based on the doctrine of qualified immunity, which protects public officials performing discretionary functions unless their conduct violates " 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Jantz v. Muci*, 976 F.2d 623, 627 (10th Cir. 1992) (*quoting Harlow v. Firzgerald*, 457 U.S. 800, 818 (1982). Because Paiz asserts that Defendants violated his clearly established First Amendment rights as a public employee, the Court must examine the contours of that right in order to determine whether or not qualified immunity applies.[1]

## II. Legal Standards

Summary judgment is appropriate if "the pleadings, answers to interrogatories, and

---

[1] The procedure for analyzing a claim of qualified immunity is as follows. First, the defendant must raise the defense of qualified immunity. Once the defendant has adequately raised the defense, the plaintiff must show that the law was clearly established when the alleged violation occurred and come forward with facts or allegations sufficient to show that the official violated the clearly established law. Then the defendant assumes the normal summary judgment burden of establishing that no material facts that would defeat his claim for qualified immunity remain in dispute. *Woodward v. City of Worland*, 977 F.2d 1392, 1396-97 (10th Cir. 1992).

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact...." FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, a court must view the record and all inferences to be drawn from it in the light most favorable to the nonmovant.

The Supreme Court has established a test for evaluating the claims of public employees who allege that their employers have retaliated against them for exercising their First Amendment rights. *See Connick v. Myers*, 461 U.S. 138 (1983); *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968). *See also David v. City and County of Denver*, 101 F.3d 1344, 1355 (10th Cir. 1996). First, the Court must determine whether the plaintiff's statements can be fairly characterized as constituting speech on a matter of public concern. *Connick*, 461 U.S. at 146. If the speech involved a matter of public concern, the Court must determine whether the " 'interests of the [employee], as a citizen, in commenting upon matters of public concern' " outweigh the " 'interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " *Id*. at 142 (*quoting Pickering*, 391 U.S. at 568). Defendants primarily challenge the threshold question of whether Paiz's speech involved a matter of public concern. These first two steps involve questions of law for the Court.

Third, assuming the *Pickering* balancing test tips in favor of the plaintiff, he or she must show that the protected speech was a motivating factor in the employer's detrimental employment decision. *Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 287 (1977). Finally, if the plaintiff makes this showing, the burden shifts to the employer to show by a preponderance of the evidence that it would have reached the same decision in the absence of the protected activity. *Id*. The third and fourth steps involve questions of fact for the jury. *Melton v. Oklahoma City*, 879 F.2d 706, 713

(10th Cir. 1989).

In deciding whether a particular statement involves a matter of public concern, a fundamental inquiry is whether the plaintiff speaks as an employee or as a citizen. *See Connick*, 461 U.S. at 147. Speech that pertains to a public agency's discharging its governmental responsibilities ordinarily will be regarded as speech on a matter of public concern. *Id*. at 148. In contrast, speech relating to internal personnel disputes and working conditions ordinarily will not be viewed as addressing matters of public concern. *Id*.; *Finn v. New Mexico*, 249 F.3d 1241, 1247 (10th Cir. 2001). Courts also consider the motive of the speaker – was the speech "calculated to redress personal grievances or [did it have] a broader public purpose [?]" *Gardetto v. Mason*, 100 F.3d 803, 812 (10th Cir. 1996).

### III.  Whether Paiz's Speech was Constitutionally Protected

Defendants argue extensively that the speech at issue in this case does not merit protected status. It is noteworthy that although Defendants dispute some of the details about Paiz's testimony to the grand jury, they do not dispute the basic fact that Paiz did testify to a grand jury in the criminal investigation of Gonzales for his alleged misuse of Village funds. The fact of his testimony, rather than the *actual date*, for example, is the critical fact.[2]

---

[2] Defendants point out that Paiz was subpoenaed by a document dated October 18, 2000, requesting his appearance the next day, but that Paiz worked a full day on October 19, 2000, and did not testify on that day. Although Paiz answered an interrogatory indicating that to the best of his recollection, he appeared before the grand jury on October 19, 2000, the affidavit of the district attorney who prosecuted the case against Mayor Gonzales, John Paternoster, addressed these inconsistencies. Mr. Paternoster testified that a grand jury was conducted on September 14, 2000, and that it issued an indictment for seven counts of criminal misconduct in the case of *State v. Elias Gonzales*. (Pasternoster Aff. ¶ 3). He further testified that another grand jury hearing was convened on November 16, 2000, and issued an Accusation and Bill of Removal From Office against Elias Gonzales (*Id*. ¶ 4). He stated that Paiz testified to the second grand jury which sought removal of Elias Gonzales from office, and that he personally talked to Paiz about his testimony. (*Id*. ¶ 5). Posternoster testified that he personally elicited questions from Paiz

In addition to raising an issue as to the date of Paiz's testimony, Defendants argue that Paiz cannot establish the content of the speech. In response to this argument, Paiz provides an affidavit stating that he remembered testifying to the grand jury that the Village never owned air-powered nailers but he knew that the Village had paid for the repair of two nailers that belonged to Gonzales. (Pltf's Ex. 6, Paiz Affid. ¶ 3). This affidavit also states that Paiz testified to the grand jury that Gonzales used Village funds to purchase five raincoats, at least one of which was given to Gonzales's son, who was not a Village employee. (*Id*. ¶). Paiz also mentioned this raincoat testimony at his deposition. (Pltf's Ex. 2, Paiz Depo. pp. 214-215). He also testified that he knew there were some other questions that he could not really recall. (*Id*. at 80). Paiz also provides the affidavit of the district attorney involved in the prosecution of the case against Gonzales. This affidavit states that the district attorney personally elicited testimony from Paiz relating to the conduct of Gonzales while Mayor of the Village of Cimarron. (Paternoster Aff. ¶ 7).

Given this factual backdrop, the Court must determine whether, as a public employee, Paiz's speech touches matters of public concern. This determination must be made based upon the content, context, and form of the given statement as revealed by the whole record. *Connick*, 461 U.S. at 147-48.

### A. Content and Context

These two factors focus on the use of the expression. If that use does not relate to any matter of political, social, or community concern, then the *Pickering* test favors the government. *Connick*,

---

relating to the conduct of Elias Gonzales while Mayor of the Village of Cimarron. (*Id*. ¶ 7). Finally, Posternoster indicated that Paiz was initially issued a grand jury subpoena for October 19, 2000; that the grand jury hearings were continued to and included the date that Paiz actually testified; and, that Paiz was under the grand jury subpoena at all times. (*Id*. ¶ 8).

461 U.S. at 146 ("government officials should enjoy wide latitude in managing their offices without intrusive oversight by the judiciary in the name of the first amendment.")

"Speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of [public] officials, in terms of content, clearly concerns matters of public import." *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir. 1988). Further, "[s]peech that seeks to expose improper operations of the government or questions the integrity of governmental officials clearly concerns vital public interests." *Id*. at 797. *See also Praeger v. LaFaver*, 180 F.3d 1185, 1190 (10th Cir. 1999).

Paiz's speech occurred in the context of an interview with a criminal investigator and during a subpoenaed appearance before the grand jury, both situations involving the criminal investigation of Gonzales. Despite Defendants' arguments to the contrary, the record before the Court is adequate for the Court to evaluate the content of Paiz's speech, *i.e.*, that he responded to questions from the investigator about potentially improper expenditures of Village funds by Gonzales, and that he answered questions relating to Gonzales's conduct that were posed to him by District Attorney Paternoster in the presence of the grand jury. (Paternoster Aff. ¶ 7).

Paiz's speech was given in his role as a citizen responding to questions in both of these settings. The content of this speech pertains to the discharge of governmental responsibilities or abuse thereof. It was speech that exposed improper conduct by a government official, bringing into question the integrity of that official. It clearly concerned vital public interests. Paiz's speech was not motivated by personal grievances, but rather, by the broader purpose of prevention of corruption in government. For all of these reasons, without a doubt, the content and context of this speech is a matter of political, social, and community concern.

### B. Form of Paiz's Speech

The form of this alleged speech, testimony under oath, also supports a finding that Paiz's speech is a matter of public concern. Testimony before an official government adjudicatory or fact-finding body is inherently a matter of public concern. *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1578 (5th Cir. 1989). Moreover, the Supreme Court has said "it is every man's duty to give testimony before a duly constituted tribunal . . . ." *Ullmann v. United States*, 350 U.S. 422, 439 n.15 (1956). Paiz's cooperation in the criminal investigation of Gonzales, through his speech with the criminal investigator, is similar in its purpose, and I conclude that it also supports a finding that the speech is a matter of public concern.

After consideration of the content, context and form of Paiz's speech, I conclude that both forms of his speech are matters of public concern, as a matter of law.

### IV. The Pickering Balancing Test

The Pickering balance requires a Court to weigh "the interest of a public employee in commenting on such matters [against] the interest of the employer in promoting the efficiency of its services." *Pickering*, 391 U.S. at 568. Moreover, statements will not be considered in a vacuum; the manner, time and place of the employee's expression are relevant, as is the context in which the dispute arose. *Connick*, 461 U.S. at 152-53. Under this test, the employee's First Amendment free speech rights are protected "unless the employer shows that some restriction is necessary to prevent the disruption of official functions or to insure effective performance by the employee." *Childers v. Independent School Dist.*, 676 F.2d 1338, 1341 (10th Cir. 1982). The real question presented under the *Pickering* balancing test is whether a plaintiff's conduct crossed the line separating

legitimate avenues of expression and unnecessarily disruptive and impairing speech.

Defendants make no showing as to how Paiz's speech caused disruption or impaired effectiveness in local government. It is clear to this Court that in speaking out on these matters that the Court has already determined to have been of public concern, Paiz engaged in beneficial and important speech as a citizen, on issues of potential misconduct highly relevant to his community. Taking the setting, context and content of this speech into consideration, the Court has little trouble concluding that the balance in this case weighs in favor of Paiz's First Amendment rights. There is simply a dearth of evidence that Paiz's actions were outweighed by the Villages interest in promoting the efficiency of public services provided; in fact Paiz's speech was aimed at improving the efficiency and value of local Village governmental services to its citizens. For all of these reasons, the Court concludes that the *Pickering* balance weighs in favor of Paiz's First Amendment rights to free speech as a matter of law.

## V.  Whether Paiz's Speech was a Substantial or Motivating Factor in the Employment Action

Having thus concluded that Paiz's speech involved matters of public concern and that his speech was entitled to constitutional protection under *Pickering*, the final two inquiries involve questions of fact as to whether Defendants were motivated to take adverse employment action against Paiz because he exercised his First Amendment rights. If he is able to demonstrate that his protected speech was a "motivating factor," then Defendants bear the burden of establishing, by a preponderance of the evidence, that it would have reached the same decision in the absence of the protected activity. *See Powell v. Gallentine*, 992 F.2d 1088, 1090 (10th Cir. 1993).

Given the Court's decision that Paiz's speech is a matter of public concern, Paiz must be able

to establish that his speech was the motivating factor in the employment decision. *Mt. Healthy City School Dist.,* 429 U.S. at 287. In essence, Defendants argue that Paiz was not terminated, constructively or otherwise and that in fact, he resigned. It seems to be their position that none of their conduct constitutes actionable employment action.

On the motive question, the Tenth Circuit has specifically held that "[e]vidence on the motivating factor issue may be sufficient to support a jury verdict even though it is circumstantial." *Ware v. Unified School Dist.*, 881 F.2d 906, 911 (10th Cir. 1989). A plaintiff may create a reasonable inference of improper motivation by presenting evidence tending to show that the reasons proffered for the adverse action are without factual support. *Id*.

Paiz's complaint alleges that Defendants intimidated, harassed, retaliated against, and constructively discharged him for exercising his protected speech. Paiz argues that despite the fact he did receive one raise, he "was being punished for testifying at the Grand Jury proceedings by being informally harassed and formally disciplined in his job and was ultimately forced from his employment." In support of his claim of retaliatory conduct, he cites six incidents related to his employment:

- Once Defendant Gonzales returned to his mayoral duties, post-indictment, he immediately removed Paiz from his supervisory duties. (Ex. 2, Paiz Depo. pp.119-120).
- Paiz alleges that on March 5, 2001 he was given a written reprimand for smelling of alcohol (Compl., ¶ 34). Defendant Decker testified at page 60 of her deposition that on March 2, she detected a strong odor of alcohol on Paiz's breath, and given two options, rather than take a breathalyser test, he chose to go home and sleep it off. (Pltf's Ex. 7). Paiz disputes that he had consumed alcohol on the day in question. He testified that a memo about this incident became part of his personnel file. (Pltf's Ex. 2, p. 110).
- Paiz's Exhibit 11 is a Employee Counseling Report, dated May 4, 2001. This is a written warning Paiz received for allegedly having a negative attitude and using Village equipment for personal use. Paiz contends that morale was low throughout

- Village government, citing a co-worker's deposition testimony (Pltf's Ex. 1, Martinez Depo. pp. 45-46). According to this same co-worker, prior to the tenure of Mayor Gonzales as mayor, Paiz appeared to have a good working relationship with his fellow co-workers. (*Id.* at 47). Finally, Decker admitted that the complaint about Paiz using Village equipment for personal use was not a valid complaint. (Pltf's Ex. 7, Decker Depo. p. 58).
- Plaintiff alleges that on August 28, 2001, he was given a written reprimand for allegedly disclosing confidential police information that Paiz had overheard while he was in the police department one day (Compl. ¶ 34). Police Chief Turner testified in his deposition about writing a memo to Mrs. Decker about keeping Paiz out of the police department. He gave a copy of this memo to Paiz (Pltf's Ex. 8, Turner Depo p. 23). Paiz claims he merely repeated information that was the subject of gossip among other Village employees, and that no one else was reprimanded for repeating such information.
- Paiz alleges that on September 28, 2001, he was disciplined for having a second job even though he did not have a second job (Compl. ¶ 34). Decker testified at her deposition that she wrote a memo to Paiz because he was working a second job. She conceded that a violation under the personnel ordinance does not include an employee performing just one project or job – it must be something ongoing. (Pltf's Ex. 7, Decker Depo p. 39). Paiz testified about why he did not consider his outside work to be a "second job" (Pltf's Ex. 2, Paiz Depo pp. 194-95).
- Paiz alleges that he was reprimanded for fixing a water leak after regular working hours (Compl. ¶ 34). He claims that if the leak had not been fixed, it would have drained all of the water in the Village water tanks (*Id*.). Paiz claims that he asked for help from Village officials on this project, but they denied his request (Pltf's Ex. 2, Paiz Depo p. 111). He claims that by denying him the help he needed, the Village was trying to pressure him out of his job.

The law is clear that deprivations less harsh than dismissal may violate a public employee's rights under the First Amendment. *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 75 (1990); *Dill v. City of Edmond*, 155 F.3d 1193, 1204 (10th Cir. 1998); *Morfin v. Albuquerque Public Schools*, 906 F.2d 1434, 1437, n.3 (10th Cir. 1990)(actions short of actual or constructive employment decision can violate the First Amendment). The Court concludes that the above-cited evidence is sufficient evidence on which a jury could find an adverse employment action.[3] Adverse employment action

---

[3] In this circuit, conduct constitutes adverse employment action when it results in "a significant change in employment status, such as firing, hiring, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1241 (10th

is determined on a case-by-case basis. *Jeffries v. State of Kansas*, 147 F.3d 1220, 1232 (10th Cir. 1998).

Reasonable inferences could be drawn from these facts that Defendants were at least partially motivated by Paiz's speech to investigatory authorities about misconduct of Gonzales to impose these adverse employment actions. Based on this evidence, when viewed in a light most favorable to Paiz, and considering the credibility factor involved, the Court concludes that a jury could return a verdict in Paiz's favor on this issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986). Summary judgment is, therefore, inappropriate.[4]

In this case, taking the allegations and proof in the record in the light most favorable to Paiz, this constitutes sufficient evidence on the motive issue to create a genuine issue of material fact that precludes the entry of summary judgment. The Court notes that the issue of motive is not one that is generally amenable to resolution by way of summary judgment. *See, e.g., Griess v. Consolidated Freightways Corp. of Delaware*, 882 F.2d 461, 463 (10th Cir. 1989).

## VI.  Whether Paiz has a Claim for Constructive Discharge

The Court has already concluded that Paiz has presented evidence of adverse employment action in retaliation for his exercise of First Amendment rights. In addition to claiming that he was intimidated, harassed and retaliated against, Paiz claims that he was constructively discharged for exercising his protected speech. Defendants' motion seeks dismissal of the constructive discharge

---

Cir. 2002)(*quoted in Abuan v. Level 3 Communications, Inc*., 353 F.3d 1158, 1174 (10th Cir. 2003).

[4] Having decided that summary judgment is inappropriate, and that this matter will proceed to trial, it is unnecessary at this juncture to address the fourth prong of the *Connick/Pickering* analysis.

claim.

To survive a motion for summary judgment on constructive discharge, an employee must establish facts sufficient to find that an employer by its illegal discriminatory acts has made working conditions so intolerable, when viewed objectively, that a reasonable person would be compelled to resign. *Spulak v. KMart Corp.*, 894 F.2d 1150, 1154 (10th Cir. 1990); *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 344 (10th Cir. 1986). The question at this stage is whether Paiz, at the time of his resignation, had the opportunity to make a free choice regarding his employment relationship with the Village. *Yearous v. Niobrara County Mem'l Hosp.*, 128 F.3d 1351, 1357 (10th Cir. 1997). Paiz need not prove the employer's specific intent to force the employee to leave, he need only show that the employer's illegal acts caused intolerable working conditions. *Derr*, 796 F.2d at 344. It is noteworthy that a finding of constructive discharge depends upon whether a reasonable person would view the working conditions as intolerable, not upon the subjective view of the employee-claimant. *Id.* Similarly, to the extent that an employer denies a conscious design to force an employee to resign, an employer's subjective intent is irrelevant; the employer must be held to have intended those consequences it could reasonably have foreseen. *Id*. The Tenth Circuit has held that the determination of whether a resignation is voluntary is based on the totality of the circumstances. *See e.g., Cacy v. City of Chickasha*, 124 F.3d 216 (10th Cir. 1997)(*unpublished decision*).

In support of their argument that Paiz was not terminated in his employment, Defendants cite proof that Paiz continued to receive customary raises. Further, they argue that his only post-October 2000 evaluation, performed after he testified to the grand jury, was performed by Debra Decker, and that she ranked Paiz at a high level for job knowledge, quality of work, initiative and application (Defts' Ex. D). In their argument that Paiz did not meet his burden of establishing that he had no

choice but to quit, Defendants cite the Court to *Sanchez v. Denver Public Schools,* 164 F.3d 527, 534 (10th Cir. 1998). Furthermore, they argue that Paiz did nothing to resolve what Paiz characterizes as intolerable conditions of employment, prior to quitting.

The Court has carefully reviewed the facts upon which Paiz bases his claim of constructive discharge. These are outlined above. In addition to his receipt of allegedly undeserved reprimands and warnings, Paiz claims that he was demoted from a supervisory to a non-supervisory position by Gonzales, when Gonzales returned to his mayoral duties, post-indictment. Courts have considered significant demotions as constituting a relevant factor in evaluating the work environment. *See James v. Sears, Roebuck and Co*., 21 F.3d 989, 993 (10th Cir. 1994).

Contrary to Defendants' arguments, Paiz testified as to efforts he made to resolve what he characterizes as intolerable conditions of employment. Paiz was asked at his deposition what he did to try to save his job and what he did as an alternative to leaving. He answered that he had approximately three different meetings with Debra Decker. (Pltf's Ex. 2, Paiz Depo. pp. 162-63).

Considering the evidence in the light most favorable to Paiz, based on the totality of the circumstances, the Court concludes that there is a genuine issue of fact as to whether or not the work environment was so intolerable that Paiz had no other option but to resign. Based on all of the facts established by Paiz, I find that a reasonable jury could conclude that Paiz was constructively discharged. For this reason, Defendants' motion is denied as to Paiz's claim for constructive discharge.

### VII.  Whether Defendants are Entitled to Qualified Immunity

Government officials who perform discretionary functions are entitled to qualified immunity

13

from civil damages, provided their conduct does not violate clearly established rights of which a reasonable government official would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant raises the defense of qualified immunity, a plaintiff must establish that the defendant's conduct violated a federal constitutional or statutory right and that the right was clearly established at the time of the conduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Defendants seek qualified immunity, first arguing that it is impossible to determine whether Paiz's speech involved matters of public concern. The Court has dispensed with this argument, concluding as a matter of law that Paiz's speech involved matters of public concern. Paiz has indeed asserted a violation of a constitutional right, and the question becomes whether that right was clearly established, such that a reasonable person in Defendants' position would have known that their conduct violated the right. *Garramone v. Romo*, 94 F.3d 1446, 1449 (10th Cir. 1996).

As discussed above, since approximately 1968, it has been settled that a state actor could not condition public employment on a basis that infringes the employee's protected interest in freedom of expression. *Connick*, 461 U.S. at 142; *Pickering*, 391 U.S. at 568. The protected freedom of expression of public employees includes their interests as citizens in commenting upon matters of public concern.

*Pickering* and *Connick* were decided in the years 1968 and 1983, respectively. There have been numerous Supreme Court and Tenth Circuit decisions since those years prior to the relevant conduct in this case, that operate to delineate the contours of this constitutional right. Several of these cases are mentioned herein.

The Court concludes that Paiz's right not to be retaliated against for protected speech analogous to that at issue in this case has long been clearly established. Accordingly, I find that

14

Defendants are not entitled to qualified immunity.

**WHEREFORE**, for the reasons stated herein the Court concludes that Defendants' Motion for Summary Judgment (Docket No. 51) shall be **denied.**

**IT IS SO ORDERED.**

_____
**SENIOR UNITED STATES DISTRICT JUDGE**